# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**AILERON INVESTMENT**
**MANAGEMENT, LLC, a Florida**
**limited liability company,**

    **Plaintiff,**

v.                                                 Case No.: 8:21-cv-146-MSS-AAS

**AMERICAN LENDING CENTER,**
**LLC, a California limited liability**
**company,**
    **Defendants.**
_____/

## ORDER

Defendant American Lending Center, LLC (ALC) moves for a protective order quashing twenty-three of Plaintiff Aileron Investment Management's deposition topics. (Doc. 105). Plaintiff Aileron Investment Management (Aileron) opposes the motion. (Doc. 111).

**I.  BACKGROUND**

Aileron and ALC "partnered to develop a loan product that utilizes construction job creating to utilize EB-5 funding." (Doc. 1, ¶ 7). Aileron was the exclusive fund manager for ALC's EB-5 investors.[1] (*Id.*). Joseph Bonora

---

[1] The EB-5 Immigrant Investor Program "permits noncitizens to apply for permanent residence in the United States by investing in approved commercial enterprises." *Liu v. SEC*, 140 S. Ct. 1936, 1941 (2020).

and Michael Maguire were co-managing directors at Aileron. (*Id.* at ¶¶ 19–20). Aileron used Justin Blackhall and his law firm as legal counsel, but Justin Blackhall also worked for ALC in an executive level position. (*Id.* at ¶¶ 22, 24). Aileron alleges Mr. Bonora, Mr. Maguire, and Mr. Blackhall created a shell company that collected millions of dollars in fees that ALC should have paid to Aileron. (*Id.* at ¶¶ 28–44).

As a result, Aileron sued ALC for: (1) aiding and abetting Mr. Maguire's breach of fiduciary duty; (2) aiding and abetting Mr. Bonara's breach of fiduciary duty; (3) aiding and abetting Mr. Blackhall's breach of fiduciary duty; (4) tortious interference with business relationship; and (5) breach of fiduciary duty. (*Id.* at ¶¶ 46–73). ALC moved to dismiss Aileron's complaint and to strike the special damages demand for attorney's fees. (Doc. 18). A July 12, 2021 order denied ALC's motion to dismiss but granted ALC's motion to strike special damages demand for attorney's fees. (Doc. 25).

ALC moves for a protective order quashing twenty-three deposition topics as "not reasonably particular, seek testimony protected by the attorney-client privilege or work-product doctrine, are not relevant to the claims and defenses in this lawsuit, or seek testimony on matters this Court has previously ruled are off limits." (Doc. 105, p. 1–2). Aileron responds that its deposition topics are valid and "substantively similar to ALC's own

corporate representative topics." (Doc. 111, p. 2).

## II. LEGAL STANDARD

Courts have discretion in controlling the discovery in a case. *Mut. Serv. Ins. v. Frit Industries, Inc.*, 358 F.3d 1312, 1322 (11th Cir. 2004). Under Fed. R. Civ. P. 26(c)(1), "[a] party or any person from whom discovery is sought may move for a protective order." Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). While discovery is broad, parties may not engage in a "fishing expedition" to obtain evidence to support their claims or defenses.  *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006).

For good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party requesting a protective order "carries the burden of showing good cause and/or the right to be protected." *See Schneider v. Hertz Corp.*, No. 3:05-cv-1298-MCR, 2007 WL 1231834, at *2 (M.D. Fla. Apr. 26, 2007) (*citing United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). The burden "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Id.*

## III. ANALYSIS

ALC objects to twenty-three topics listed in Aileron's deposition notice. The court will examine each deposition topic in turn.[2]

### 1. Topic 1

Topic 1 is "ALC's formation, corporate structure, ownership, business operations and affiliation with other entities." (Doc. 105, Ex. A, p. 3). ALC claims the phrase "affiliations with other entities" is "overly broad because it encompasses every other entity with which ALC has ever done business." (Doc. 105, p. 5). ALC claims Aileron's proposed rewording of this topic, substituting the word "affiliation" with "affiliate," "does not cure the deficiency" because no ALC affiliates have been pleaded as defendants and "testimony regarding ALC's unidentified affiliates is beyond the pleadings and not proportional to this case." (*Id.* at p. 6). ALC further argues Aileron's allegations against ALC and ALC's defenses and counterclaims against Aileron "have nothing to do with ALC's corporate structure" because ALC is a limited liability company. (*Id.*) (emphasis removed).

Aileron responds claiming "ALC takes nitpicking to a new extreme as

---

[2] "The Court will not issue an order based on speculation that otherwise permissible deposition questioning may veer off course into improper subjects. To the extent questioning at the deposition may delve unexpectedly into [] sensitive issues, counsel can address that issue at that time." *Scientific Games Corp. v. AGS, LLC*, 2017 WL 3671286, at *4 (D. Nev. Aug. 24, 2017).

an understanding of a litigant's corporate structure and ownership is basic information regularly requested by parties in business disputes." (Doc. 111, p. 5–6). Aileron notes ALC's deposition notice for Aileron's corporate representative includes a definition of the word "Plaintiff" including "each of its affiliates, including, without limitation, Aileron Holdings and Aileron RE Opportunities Fund, LLC, and each of their employees, agents, attorneys, or other persons acting for or on behalf of them or under their authority and control" and included "Plaintiff's formation and ownership structure" as a topic of inquiry. (*Id.*) (*citing* Ex. A).

The motion for a protective order as to Topic 1 is **GRANTED in part**. "'[A]ffiliated' is not on its face an ambiguous term." *U.S. Commodity Futures Trading Commission v. Trade Exchange Network Limited*, 61 F. Supp. 3d 1, 9 (D. D.C. June 24, 2014). ALC has not demonstrated the usage of the word "affiliate" or "affiliation" for this deposition topic is overly broad. Aileron may depose ALC's corporate representative on ALC's formation, limited liability company structure, ownership, business operations, and affiliation with other entities.

### 2. Topics 3 and 13

Topics 3 and 13 are, respectively, "[t]he answer, defenses and counterclaims asserted in this dispute by ALC" and "[t]he identity and

substance of documents, information and other matters that support ALC's answers, defenses and counterclaim." (Doc. 105, Ex. A, p. 3). On Topic 3, ALC claims deposing its corporate representative on ALC's answers, defenses, and counterclaims would necessarily "require[] the representative to relate facts to legal conclusions, in violation of the work product privilege and the attorney client privilege." (Doc. 105, p. 7) (*citing Lyew v. Homebanc Mortg. Corp.*, No. 0:06-cv-61045-JIC, 2006 WL 8462692, at *1 (S.D. Fla. Dec. 20, 2006)). ALC argues deposing its corporate representative on documents and information supporting its answers, defenses, and counterclaims would also violate the work product privilege and attorney-client privilege by requiring the corporate representative to "divulge its mental impressions regarding which documents support" ALC's assertions in this case. (Doc. 105, p. 8). ALC also claims the numerosity of counts, paragraphs, and affirmative defenses in the various complaints and answers filed in this matter renders this topic not reasonably particular. (*Id.*).

Aileron responds asserting the *Lyew* case is "is not applicable because the court noted specifically that the notice of deposition in that case required the 'representative to relate facts to legal conclusions.'" (Doc. 111, p. 7) (*citing Lyew*, 2006 WL 8462692, at *1). Aileron argues the work product privilege does not apply to Topics 3 and 13 because the facts within documents

protected by the privilege are not themselves subject to protection. (Doc. 111, p. 7) (*citing Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 34 (D. Conn. 2003)). Aileron further contends any claims to the attorney-client privilege are waived because ALC asserted an advice of counsel defense. (Doc. 111, p. 8) (citing *Lyew*, 2006 WL 8462692, at *1).

The motion for a protective order as to Topics 3 and 13 are **GRANTED in part**. ALC has not demonstrated this topic, directed to facts underlying ALC's answers, defenses, and counterclaims, is not reasonably particular. ALC has not established the large number of counts, paragraphs, and affirmative defenses in the various complaints and answers filed in this matter present such a "conceptually dense dynamic" as to render deposing ALC's corporate representative on its underlying facts untenable. *In re Douglas Asphalt Co.*, 436 B.R. 246, 251 (S.D. Ga. 2010). Further, ALC has not demonstrated the facts underlying its answers, defenses, and counterclaims are privileged.

Aileron may therefore depose ALC's corporate representative on the facts underlying its answers, defenses, and counterclaims. Aileron may also depose ALC's corporate representative on the existence of documents, information, and other matters that support ALC's answers, defenses, and counterclaims. Finally, due to its advice of counsel defense on the issue, ALC

7

may not assert the attorney-client privilege shields answers to questions pertaining to Live Oak Bank's omnibus assignment to ALC or ALC's omnibus assignment to Silver Hawk. *See Inmuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 564 (S.D. Fla. 2001); (Doc. 94, p. 25) (asserting the advice of counsel affirmative defense to entering into the omnibus agreements).

### 3. Topic 5

Topic 5 is "[t]he identity, position and substance of knowledge of all ALC representative[s] with information regarding the claims, defenses, counterclaims or any issues in dispute in the Litigation." (Doc. 105, Ex. A, p. 3). Aileron claims this topic is not reasonably particular, "woefully overbroad and not at all specific" because it would require ALC's corporate representative "to testify regarding each of ALC's representatives' knowledge regarding 7 separate counts and 161 allegations and defenses." (*Id.*). ALC responds that this topic "seeks basic information consistent with Rule 26."

ALC fails to establish Topic 5 is overly broad or not reasonably particular. The motion for a protective order as to Topic 5 is therefore **DENIED**.

### 4. Topics 7 and 8

Topics 7 and 8 are, respectively, "ALC's responses to discovery and the identity of the individuals who participated in the preparation of your

discovery responses" and "[d]ocuments ALC compiled and produced in response to discovery requests and their authenticity." (Doc. 105, Ex. A, p. 3). ALC claims the volume of documents and responses produced in this matter renders these topics not reasonably particular. (Doc. 105, p. 10). Since "ALC's discovery response were prepared by counsel from information provided by ALC," ALC further objects to "providing any information in response to Topic Nos. 7 and 8 that is protected by the attorney-client privilege or work-product doctrine." (*Id.*).

Aileron responds by asserting ALC can designate multiple corporate representatives to testify if necessary, and "ALC should be able to designate those who participated in the preparation of discovery responses." (Doc. 111, p. 9). Aileron further argues "ALC cites no authority for the proposition that a party cannot determine what its opponent did to meet its discovery obligations." (*Id.*).

ALC fails to establish Topics 7 or 8 are not reasonably particular. The motion for a protective order as to Topics 7 and 8 is **DENIED**. ALC may in good faith assert any unwaived privileges in response to individual questions during the deposition.

### 5. Topics 14 and 15

Topics 14 and 15 are, respectively, "ALC's net worth" and multiple

facets of "ALC's financial performance as of and for the years between 2014 to 2020." (Doc. 105, Ex. A, p. 4). ALC argues a prior order from this court (Doc. 76) regarding Aileron's attempts to obtain financial discovery should limit these topics. (Doc. 105, p. 10–11). Aileron responds that neither deposition topic covers information precluded by this court's prior order. (Doc. 111, p. 10).

Topics 14 and 15 are foreclosed by this court's order denying Aileron's motion to compel financial information from ALC. *See* (Doc. 76). The motion for a protective order as to Topics 14 and 15 is **GRANTED**.

### 6. Topics 23 and 24

Topics 23 and 24 are, respectively, "[c]ommunications, dealings and agreements with Joseph Bonora and any entity controlled by Bonora including, without limitation, Catalyst Asset Holdings, LLC, Catalyst Asset Management, LLC, Catalyst Asset Management, Inc., Catalyst Community Capital, Inc., Catalyst Community Development, LLC, Catalyst Community Funding, LLC, or JRB Holdings, LLC" and "[c]ommunications, dealings and agreements with Michael Maguire and any entity controlled by Maguire including, without limitation, Candescent Capital, LLC ("Candescent"), or Bryn Capital Advisors II, Inc." (Doc. 105, Ex. A, p. 4–5).

ALC claims these topics are not reasonably particular because they

10

encompass a "vast universe of information and documents" including "every single communication, dealing, or agreement ALC had with at least 11 people or entities over an unlimited period of time." (Doc. 105, p. 12). Aileron responds arguing "[t]his information is directly relevant and narrowly tailored" to Aileron's claims in this matter.

ALC fails to establish Topics 23 and 24 are not reasonably particular. The motion for a protective order as to Topics 23 and 24 is **DENIED**.

### 7. Topics 25, 29, 36

Topics 25, 29, and 36 are, respectively, "[c]ommunications, dealings and agreements with Justin Blackhall and any entity controlled by Blackhall including, without limitation, Blackhall, P.C., or Bram Consulting, LLC," "[t]he nature and scope of legal work performed by Blackhall and Blackhall P.C. for ALC and its affiliates," and "[d]iscussions with Blackhall regarding the Omnibus Assignments and this litigation, and Blackhall's participation in this litigation as counsel or otherwise."

ALC claims these topics necessitate the disclosure of information protected by the attorney-client privilege. (Doc. 105, p. 12). ALC claims they have not waived the attorney-client privilege "with respect to ALC's execution of the Omnibus Assignment agreements," but in the event its corporate representative does during ALC's deposition, "that limited waiver does not

11

waive the privilege with respect to any other matters." (*Id.* at 14).

Aileron responds that "ALC has waived the privilege regarding any communications between ALC and Blackhall regarding Silver Hawk" by raising an advice of counsel affirmative defense. (Doc. 111, p. 13). Aileron further claims Blackhall's actions are covered by the crime-fraud exception to the attorney-client privilege. (*Id.* at 14). Notwithstanding Aileron's claims of waiver or exception, Aileron also argues "[t]here are thousands of non-privileged communications to or from Blackhall" and "ALC can object to questions it claims are protected by a privilege." (*Id.* at 15).

ALC raises an advice of counsel affirmative defense in its answer to Aileron's amended complaint. (Doc. 94, p. 25) ("In entering into the Omnibus Assignments, ALC in good faith relied *upon advice of its counsel*, Justin Blackhall of Blackhall, PC"). By raising an advice of counsel affirmative defense, ALC has impliedly waived the attorney-client privilege as to questions about that defense. *Butterworth v. Laboratory Corp. of Am. Holdings*, No. 3:08-cv-411-MMH-JK, 2010 WL 11470895, at *5 (M.D. Fla. Dec. 2, 2010) (*citing Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458 (E.D. Mich. 2008)) (noting a difference between a "mere assertion of a defense of good faith, as opposed to a defense of good faith reliance on the opinion of counsel"). The motion for a protective order as to Topics 25, 29, and 36 is

therefore **DENIED**. ALC may in good faith assert any unwaived privileges in response to individual questions during the deposition.

### 8. Topic 44

Topic 44 is "[a]mount and justification for any financial or other damages claimed by ALC as a result of AIM's lawsuit against Silver Hawk and LOB." (Doc. 105, Ex. A, p. 6). ALC claims it "will provide testimony regarding the amount of its damages… [b]ut questions regarding the justification for those damages improperly invade the attorney client privilege and work product doctrines." (Doc. 105, p. 14). Aileron responds that it is "entitled to seek information regarding the amount and claimed basis for the damages that ALC seeks to recover." (Doc. 111, p. 15).

ALC fails to establish Topic 44 will necessarily invade privileged information. The motion for a protective order as to Topic 44 is therefore **DENIED**. ALC may in good faith assert any unwaived privileges in response to individual questions during the deposition.

### 9. Topic 27

Topic 27 is "[c]ommunications with third parties regarding any of the issues raised in this litigation." (Doc. 105, Ex. A, p. 5). ALC argues this topic is overly broad and not reasonably particular because it is "not bounded by time or any specific, concise issue in this lawsuit." (Doc. 105, p. 15). Aileron

responds that its dispute with ALC is "not overly complex" and Aileron is "not seeking testimony regarding documents produced by others." (Doc. 111, p. 16–17).

ALC fails to establish Topic 27 is not reasonably particular. The motion for a protective order as to Topic 27 is **DENIED**. ALC may in good faith assert any unwaived privileges in response to individual questions during the deposition.

**10. Topics 31, 46, 47**

Topics 31, 46, and 47 are, respectively, "[c]ompensation and bonuses paid to ALC executive officers since 2015 including, without limitation, John Shen and Stella Zhang," "[d]istributions made by ALC to Regional Centers Holdings Group since 2015," and "[d]istributions made to the owners of Regional Centers Holdings Group since 2015." (Doc. 105, Ex. A, p. 5–6). ALC claims these topics are irrelevant and disproportionate to the needs of this case. (Doc. 105, p. 16). ALC argues "these Topics are simply [Aileron's] improper attempts to pry into the private business affairs of non-parties and their owners." (*Id*.). ALC contends its corporate representative "cannot testify as to distribution[s] made by an entirely separate company." (*Id*. at 17).

Aileron responds "the compensation paid by a party in litigation to witnesses for that party establishes bias, which is always relevant." (Doc.

111, p. 17). Aileron asserts Regional Centers Holdings Group "owns 100% of ALC; thus, distributions based on ALC's financial performance presumably would" be disbursed from Regional Centers Holdings Group itself. (*Id.*). Aileron claims these topics provide relevant information about "the financial benefit realized by ALC through its business venture with [Aileron] to address ALC's motive for facilitating the misconduct of the Former [Aileron] Representatives." (*Id.*).

ALC fails to establish Topics 31, 46, and 47 are irrelevant or disproportionate to the needs of this case. The motion for a protective order as to Topics 31, 46, and 47 is **DENIED**.

### 11. Topic 34

Topic 34 is "[a]greements, communications and business dealings between ALC and Live Oak Bank." (Doc. 105, Ex. A, p. 5). ALC argues this topic is overly broad and not reasonably particular because it "is not limited in time or to the allegations and defenses in this matter" and requires ALC's corporate representative to "testify as to every single dealing, agreement, and communication ALC ever had with Live Oak Bank over the entire life of the parties' relationship." (Doc. 105, p. 17). ALC responds "[t]his request is directly relevant to the claim that ALC tortiously interfered with [Aileron's] relationship with Live Oak Bank." (Doc. 111, p. 18).

ALC fails to establish Topic 34 is overly broad or not reasonably particular. The motion for a protective order as to Topic 34 is **DENIED**.

### 12. Topics 37 and 38

Topics 37 and 38 are, respectively, "ALC's investment in the Atrium Project referenced in the ALC Counterclaim and the terms of associated loan, including, without limitation, the loan commitment letter, loan documents and reason that ALC representatives requested the general contractor to produce and backdate various documents demonstrating the Atrium and Uptown project were a single project," and "[o]ther terms and conditions of the Atrium loan including ALC's proposed ownership in the Atrium project." (Doc. 105, Ex. A, p. 5). ALC argues Aileron voluntarily dismissed allegations about the Atrium Project (Doc. 36, p. 2–3) and ALC's references to the Atrium Project in its counterclaims (Doc. 100, p. 10–11) do not provide a basis for discovery about the Atrium Project because the references "do not address or even implicate the substance of the Atrium Project or Loan." (Doc. 105, p. 18–19).

Aileron responds that "ALC's Counterclaim raises the Atrium project and its investment in the project… [and] suggests that [Aileron] asserted frivolous claims against ALC related to the Atrium project." (Doc. 111, p. 18–19); *See also* (Doc. 94, p. 35) (referencing the Atrium project in the

counterclaim). As such, Aileron contends it is "entitled to obtain evidence regarding the specific issues raised by ALC." (*Id.* at 19).

ALC fails to establish Topic 37 is overly broad or not reasonably particular. The motion for a protective order as to Topic 37 is **DENIED**.

### 13. Topics 43 and 52

Topics 43 and 52 are, respectively, "ALC's website content from 2014 to 2021, including references to AIM, Silver Hawk, Bonora, Maguire and Blackhall," and "[i]nformation presented on ALC's website from 2015 to 2020." (Doc. 105, Ex. A, p. 6–7). ALC argues these topics are overly broad and not reasonably particular because they are foreclosed by this court's prior order on a motion to compel filed by Aileron. (Doc. 105, p. 20) (*referencing* (Doc. 47, p. 6)). Aileron responds that "Topics 43 and 52 are far more narrowly tailored" than the request for production rejected by this court's prior order. (Doc. 111, p. 19–20).

The request for production previously rejected by this court sought "[a]ll communications between January 1, 2014 and the present to or from any individual regarding preservation of content on the website of ALC or any affiliate of ALC and regarding coding changes that would impact or limit the preservation of website content." (Doc. 28, Ex. 2, p. 37). Topics 43 and 52 concern a much smaller universe of information about ALC's website. ALC

17

fails to establish Topics 43 and 52 are overly broad or not reasonably particular. The motion for a protective order as to Topics 43 and 52 are **DENIED**.

## IV. CONCLUSION

ALC's Motion for Protective Order is **GRANTED in part and DENIED in part**.

**ORDERED** in Tampa, Florida on January 11, 2022.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge