UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AILERON INVESTMENT
MANAGEMENT, LLC, a Florida
limited liability company,

    Plaintiff,

v.                                                Case No.: 8:21-cv-146-MSS-AAS

AMERICAN LENDING CENTER,
LLC, a California limited liability
company,

    Defendants.
_____/

## ORDER

Plaintiff American Lending Center, LLC (ALC) moves for leave to serve a supplemental expert report. (Doc. 113). Defendant Aileron Investment Management, LLC (Aileron) moves to seal two exhibits ALC attaches to its motion. (Doc. 117). The parties oppose each other's motions. (Doc. 119, 124). ALC's motion (Doc. 113) is **GRANTED in part and DENIED in part** and Aileron's motion (Doc. 117) is **GRANTED**.

I.    BACKGROUND

Aileron and ALC "partnered to develop a loan product that utilizes construction job creating to utilize EB-5 funding." (Doc. 1, ¶ 7). Aileron was the

1

exclusive fund manager for ALC's EB-5 investors.[1] (*Id.*). Joseph Bonora and Michael Maguire were co-managing directors at Aileron. (*Id.* at ¶¶ 19–20). Aileron used Justin Blackhall and his law firm as legal counsel, but Justin Blackhall also worked for ALC in an executive level position. (*Id.* at ¶¶ 22, 24). Aileron alleges Mr. Bonora, Mr. Maguire, and Mr. Blackhall created a shell company that collected millions of dollars in fees that ALC should have paid to Aileron. (*Id.* at ¶¶ 28–44).

As a result, Aileron sued ALC for: (1) aiding and abetting Mr. Maguire's breach of fiduciary duty; (2) aiding and abetting Mr. Bonara's breach of fiduciary duty; (3) aiding and abetting Mr. Blackhall's breach of fiduciary duty; (4) tortious interference with business relationship; and (5) breach of fiduciary duty. (*Id.* at ¶¶ 46–73). ALC moved to dismiss Aileron's complaint and to strike the special damages demand for attorney's fees. (Doc. 18). A July 12, 2021 order denied ALC's motion to dismiss but granted ALC's motion to strike special damages demand for attorney's fees. (Doc. 25).

ALC now requests leave to serve a supplemental expert report. (Doc. 113). ALC claims leave should be granted because the expert report was

---

[1] The EB-5 Immigrant Investor Program "permits noncitizens to apply for permanent residence in the United States by investing in approved commercial enterprises." *Liu v. SEC*, 140 S. Ct. 1936, 1941 (2020).

2

supplemented to include information from settlement agreements "[Aileron] produced after [ALC's Damages Expert, Kenneth Mathieu] prepared his initial report." (*Id.* at 10). Aileron claims the expert report discusses information not relevant until postjudgment. (Doc. 119, p. 5). Aileron further argues the expert report is untimely, unnecessary, and too expansive under Federal Rule of Civil Procedure 26(e). (*Id.* at 5–13).

Aileron in turn moves to seal two exhibits attached to ALC's motion. (Doc. 117). Aileron argues Exhibit A (ALC's supplemental expert report) and Exhibit C (portions of the deposition of Aileron's corporate representative) discuss confidential business information from third parties through "settlement agreements for prior litigation in which [Aileron] was involved." (*Id.* at 2–3). ALC opposes Aileron's motion, arguing the presumption of a public right of access and the Middle District of Florida's local rules preclude Aileron from sealing ALC's exhibits. (Doc. 124).

## II.  LEGAL STANDARD

Parties are obligated under Federal Rule of Civil Procedure 26(e) to supplement an expert report "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the

other parties during the discovery process or in writing." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019) (*quoting* Fed. R. Civ. P. 26(e)(1)(A)). Rule 26(e) "permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-cv-24277-JEM, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016). An expert report thus "may not be supplemented in order to cure a major omission or to remedy an expert's inadequate or incomplete preparation." *Lincoln Rock, LLC v. City of Tampa*, No. 8:15-cv-1374-JSM-JSS, 2016 WL 6138653, at *2 (M.D. Fla. Oct. 21, 2016).

## III. ANALYSIS

ALC requests leave to serve a supplemental expert report from its damages expert, Kenneth Mathieu. (Doc. 113). Mr. Mathieu's supplemental report contains four opinions: one "quantif[ying] his initial opinion that [Aileron's] damages in this matter must be reduced by the consideration it received" from several legal settlements Aileron reached prior to its entering into litigation with ALC; and three opinions "build[ing] upon, without changing, the opinions in Mr. Mathieu's Initial Report." (Doc. 113, p. 1–2). ALC argues leave should be granted because Mr. Mathieu's supplemental report

4

includes analysis responding to the rebuttal report of Aileron's damages expert and "information that [Aileron] produced after Mr. Mathieu issued his initial report." (*Id.* at 8–9).

ALC claims it is substantially justified in serving Mr. Mathieu's supplemental report because it "rel[ies] upon evidence that was not available to ALC when he issued his Initial Report." (Doc. 113, p. 18). ALC also claims granting leave to serve Mr. Mathieu's supplemental report in this instance is harmless because ALC notified Aileron of its intent to serve a supplemental expert report, "Mr. Mathieu prepared his Supplemental Report well in advance of the deadline for supplementation under Rule 26(e)(2)," and "there is no risk that the Supplemental Report will disrupt the trial." (*Id.* at 14–17).

Aileron argues ALC's request should not be granted because ALC seeks only to supplement its expert report to include information "undisputedly related to ALC's affirmative defense of set-off, a determination which is not proper until after judgment, if at all." (Doc. 119, p. 6). Aileron argues ALC was aware of the settlements Mr. Mathieu utilized in drafting his supplemental expert report "long before filing his Initial Report. . . [e]ven though he did not know the specific amounts paid under the terms of the Prior Settlements." (*Id.* at 9). Aileron further claims ALC cannot freely be given leave to supplement

5

its expert report because the report does not address "the type of additional or corrective information contemplated by Rule 26." (*Id.* at 10–11). Aileron further claims ALC's request is untimely and Aileron will thus be prejudiced because the filing of a supplemental expert report would necessitate the extension of multiple impending deadlines, including the dispositive motion deadline. (*Id.* at 12).

As a preliminary matter, ALC has timely moved for leave to serve a supplemental expert report. "The extent to which an expert's supplement is deemed 'timely' under Rule 26(e) is generally tied to the discovery and expert disclosure deadlines set forth in a court's scheduling order, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 246224, at *3 (N.D. Fla. Jan. 25, 2021), although—absent a directive from the court to the contrary—Rule 26(e) permits Rule 26(a)(2)(B) expert witnesses to supplement their disclosures up until the pretrial disclosure deadline." *SFR Services LLC v. Electric Ins. Co.*, 8:19-cv-2013-CPT, 2021 WL 1193284, at *4 (M.D. Fla. March 30, 2021).

This court granted in part ALC's Motion to Compel on October 29, 2021. (Doc. 76). In that order, this court directed Aileron to "produce the final executed agreements for the settlements of the litigation mentioned" in two requests for production. (*Id.* at p. 2). ALC received the settlement agreements

6

and accompanying documents on November 22, 2021. (Doc. 113, p. 4). ALC filed the present motion on January 7, 2022, three weeks before the discovery deadline of January 28, 2022. (Doc. 83).

Aileron's contention that ALC's supplemental expert report is untimely because "ALC's expert was aware of the Prior Settlements long before filing his Initial Report" is directly undercut by Aileron's admission that ALC's expert "did not know the specific amounts paid under the terms of the Prior Settlements." (Doc. 119, p. 8). ALC's expert at multiple points relies on the specific dollar amount of Aileron's prior settlements in calculating damages for this matter. ALC's request for leave to serve a supplemental expert report was thus timely filed.

The four opinions in ALC's supplemental expert report "fall into two categories: . . . opinions based upon [the settlement agreements] . . . [and] additional analysis in response to [Aileron's damages expert's] rebuttal report, which sheds additional light on the Initial Report." (Doc. 113, p. 7–8). Aileron's objections to the portions of Mr. Mathieu's supplemental report utilizing information from the settlement agreements rely upon arguments this court previously rejected in granting ALC's motion to compel the settlement agreements. (Doc. 119, p. 5–9). Aileron more substantively objects to the

7

portions of Mr. Mathieu's supplemental report containing analysis meant to respond to Aileron's damages expert's rebuttal report. (*Id.* at 10). Aileron claims these portions are "not the type of additional or corrective information contemplated by Rule 26." (*Id.* at 10–11).

The first, third, and fourth opinions in Mr. Mathieu's supplemental expert report are informed by and repeatedly cite to the settlement agreements and accompanying documents Aileron turned over to ALC on November 22, 2021. This newly obtained evidence provides a sufficient basis for the additive opinions ALC seeks to present with its supplemental expert report. *Oil Consulting Enters, Inc. v. Hawker Beechcraft Global, LLC*, No. 8:16-cv-3453-SJB-AEP, 2018 WL 936051, at *1 (M.D. Fla. Feb. 16, 2018).

However, Aileron is generally correct that a supplemental expert report may not be used as a workaround such that "each party could claim the right to continually 'supplement' its expert reports in response to the last expert report its adversary had submitted." (*Id.* at 11) (*citing Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 1:05-cv-9546-LMM-THK, 2007 WL 4157163, at *5 (S.D.N.Y. Nov. 16, 2007)). The second opinion in Mr. Mathieu's supplemental expert report (Doc. 125, Ex. A, p. 16) does not use any newly obtained evidence and instead simply replies to portions of Aileron's damages expert's rebuttal

8

report. Since the second opinion in Mr. Mathieu's supplemental expert report was not used to amend or add to opinions from his prior report, leave to serve this portion of the report is unwarranted.

Finally, regarding Aileron's motion to seal (Doc. 117), ALC raises concerns about sealing Exhibits A and C of ALC's motion (Doc. 113) considering Local Rule 1.11(e), M.D. Fla, which states "[s]ealing of a settlement agreement is unavailable absent an extraordinary justification." However, the exhibits are not settlement agreements themselves. The exhibits merely contain confidential business information gathered from settlement agreements between Aileron and third parties. Further, Local Rule 1.11(e) specifically sites "protection of a non-party" and protection of "proprietary information" as an extraordinary justification making a settlement agreement available for seal. The confidential business information from nonparties to this litigation contained within Exhibits A and C of ALC's motion (Doc. 113) presents good cause to seal the exhibits.

## IV.   CONCLUSION

ALC's motion for leave to serve a supplemental expert report (Doc. 117) is **GRANTED in part and DENIED in part**. ALC's expert Mr. Mathieu's report may be supplemented with the exception of the proposed second opinion.

Aileron's Motion to Seal (Doc. 113) is **GRANTED**.

**ORDERED** in Tampa, Florida on February 22, 2022.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

10